## M. A. HARPER v. THE STATE.

### No. 5897.   Decided January 12, 1921.

**1.—Theft of Automobile—Unknown Owner—Receiving Stolen Property—Grand Jury.**

Where upon trial of receiving a stolen automobile, knowing it to have been stolen, the jury finding defendant not guilty of the theft thereof, the indictment alleged that the defendant received said automobile from some party to the grand jurors unknown, and the evidence showed that the grand jurors knew at the time they returned the indictment from whom the defendant received the car, the conviction could not be sustained.

**2.—Same—Exculpatory Evidence—Charge of Court.**

. Where upon trial of receiving stolen property, the State put in evidence the statements of defendant showing that he bought the car from a certain party, naming him, and that he paid him for it, and that the acknowledged bill of sale was admitted in evidence, it devolved upon the State to show that this theory was false and the jury should have been so instructed.

Appeal from the Criminal District Court of Dallas.   Tried below before the Honorable Robt. B. Seay.

Appeal from a conviction of receiving stolen property;   penalty, two years imprisonment in the penitentiary.

The opinion states the case.

*Noah Roark, W. W. Nelms,* and *Williams, Dougherty & Muse,* for appellant.—On question of ownership: Brewer v. State, 18 Texas Crim. App., 456; Williamson v. State, 13 id., 514; Jorasco v. State, 6 id., 238; Shockley v. State, 38 Texas Crim. Rep., 458; Swink v State, 32 id., 530.

*Alvin M. Owsley,* Assistant Attorney General, for the State.

DAVIDSON, PRESIDING JUDGE.—The indictment against appellant contains two counts, one for the theft of an automobile, the property

of E. L. Davenport, and the other for fraudulently receiving the property of E. L. Davenport from some person to the grand jurors unknown.

There are quite a number of very interesting questions which, in the judgment of the writer, would require a reversal, most of which he deems unnecessary to discuss in view of the attitude the record presents the case.

The State's case is made by the witness Woolsey to the effect that he and appellant had an understanding to steal an auto and were driving in appellant's car down one of the streets or Dallas. At a certain point they discovered a car and appellant said he would take it and did, and that he, Woolsey, then drove appellant's car out to appellant's residence, and the next day they took the stolen car and changed the numbers, describing the process of filing and stamping new numbers; that they took the stolen car to Fort Worth, and there he executed a bill of sale under the name of Berryfield, and that this bill of sale was acknowledged before a notary public. This is the testimony of the accomplice Woolsey. Appellant's testimony is to the effect that he was not out with Woolsey; that he did not steal or assist in stealing the car with Woolsey, and had nothing to do with the transaction about which Woolsey testified. His testimony while on the witness stand contradicts everything Woolsey said with reference to the matter. He himself testified and was supported by several other witnesses, that he bought the car from a man named Butler, who drove it to his barbershop out in the direction of the exposition grounds. These witnesses testified practically in the same manner and in the same way, that Butler drove to appellant's barbershop and offered the car for sale. One of the witnesses testified that he wanted to buy the car and offered three hundred dollars for it; that it was a Ford car and was not in a very good condition. Butler declined to sell for that amount, asking four hundred dollars. Another one declined to buy it because he did not have the money with which to purchase. Finally appellant made a trade with Butler and agreed to pay him four hundred dollars, and each put up a forfeit of one hundred dollars, Butler and appellant were to consummate the trade the next day. That he went to Fort Worth the next day to consummate the trade and pay for the car, and that Butler went before a notary public, a lawyer in Fort Worth, whose name was Smith, and there the bill of sale was executed and acknowledged before this notary. After this occurred appellant had the car repainted and a top put on it. It seems the car did not have a top at the time he purchased it. The expense of this painting and fixing the car cost him $150, and he had it fixed up for the use of his family, and that they drove about the city of Dallas with it two or three months when some private detectives approached him with reference to the car. A conversation occurred and among other things he told them that he bought the car; they asked from whom, and he said he did not recollect the name, but that he had a bill of sale and would get

it. He got the bill of sale and turned it over to the officers. The bill of sale was signed by Butler as before stated. That fact was not questioned but was proved by the testimony on both sides. The whole matter was amplified before the jury by the testimony of the officers and defendant's testimony as well. There was a great deal of testimony and details in reference to whether the numbers on the car had been changed or not, some to the effect that they had not been and some to the effect that the numbers had been changed. The court charged upon both counts. The jury acquitted of theft and convicted of receiving from some party to the grand jurors unknown as charged in the indictment.

One of the contentions is that the conviction cannot stand because the grand jurors knew at the time they returned the indictment from whom appellant received the car; that he had turned over his bill of sale to the officers long prior to the return of the indictment, and that there was a copy made and the bill of sale returned to him, or a copy thereof, one or the other, the officers retaining the other. This was in their possession. They knew all these facts and went before the grand jury, and by the slightest diligence the grand jury could have known and doubtless did know that appellant claimed to have bought the car from Butler, and had a bill of sale from Butler acknowledged before a notary in Fort Worth. This notary it seems did not appear as a witness in the trial for either side, but the bill of sale disclosed the name of the notary and his residence. The State could have produced him if necessary, for they were placed on notice. There is no evidence in the record that appellant received this car from anybody except from Butler, unless it be the statement of the supposed joint thief Woolsey, who testified he went with appellant to Fort Worth and executed a bill of sale under the name of Berryfield. If such bill of sale was executed, it was not further shown than by the testimony of Woolsey. It is a self-evident proposition that appellant could not be charged with or convicted for receiving the stolen car from Woolsey. The idea of fraudulently receiving stolen property does not convey but excludes the idea that joint takers can be receivers from each other under such circumstances. If Woolsey's testimony is to be credited, he and appellant jointly stole the car, both being present and principals in the transaction, and that he acted with him throughout in secreting it, and so far as his testimony shows, is evidence of the fact that the car was stolen by them. Therefore, his reception of it from Woolsey under the name of Berryfield, or any other name, could not constitute receiving stolen property. This was but the act, if true, of both concealing, covering up and fabricating testimony to cover up the original taking in which both participated. Then the only other theory upon which appellant could have been convicted for receiving was that he received it from Butler knowing at the time it was stolen. If appellant stole the car, he knew it was stolen, and his reception from Butler under the circumstances would not constitute receiving stolen property

for he knew that the car Butler brought to him and sold him was the car that he himself had stolen. This would be but another act of his concealing the fact of the theft, and would be evidence going to sustain the State's theory of the original taking. There is no evidence that appellant knew that Butler had stolen the car, and the State's evidence excluded it. So if appellant bought the car from Butler, he either bought it innocently or he bought it knowing it was the car he had stolen, and in either event he could not be guilty of fraudulently receiving the stolen property. The State did not undertake to controvert appellant's theory of the case except as already stated. So we are of opinion that the count charging reception of fraudulently receiving the property from an unknown party was not sustained. If he received it from Butler the grand jurors knew it, or could have known it, and should have so charged in the indictment. If he received it from Woolsey under the name of Berryfield, of course the question of receiving stolen property was disproved by the State's testimony. There is nothing, as we understand this record, to show that Butler stole the car, or that he had received it from somebody who had stolen it, and that appellant knew that fact when he purchased the car. All the testimony shows that he either bought the car in good faith, or that he committed the theft. The court should not have submitted the issue of receiving stolen property, and the judgment for this reason must be reversed inasmuch as the facts do not sustain it. The indictment is also vicious in charging the reception from an unknown owner. If the grand jury did not believe that he received it from Butler with the facts before them, they could have charged such reception, and then in another count charged the theory that he received it from some unknown party; but with those facts before the grand jury, they were not permitted to ignore that condition of the record. There is no evidence he received the car from any one except from Butler.

There is another view of it: The State put in statements of appellant showing that he bought the car from Butler, and that he paid him for it, and that Butler acknowledged a bill of sale to him. It was produced and shown before the jury and permeated the case. It would, therefore, devolve upon the State to show this theory was false, and the jury should have been so instructed.

There were other questions raised with reference to the introduction of testimony, the refusal of special charges, and comments of the court on the introduction and rejection of testimony, some of which would require a reversal of the judgment, but a discussion of those matters is pretermitted.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*